United States District Court
Southern District of Texas
**ENTERED**
August 23, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FIDELIS J. BADAIKI,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-2216 |
| | § | |
| **SCHLUMBERGER HOLDINGS** | § | |
| **CORPORATION,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

This is a case brought under 42 U.S.C. § 1981 in which Plaintiff alleges Defendants—who are his former employers and various associated individuals—discriminated against him based on race. Pending before the Court[1] is Defendants' Motion to Dismiss under Rule 12(b)(6). (Dkt. No. 63.) Also pending before the Court is Plaintiff's Motion to be Heard regarding what documents the Court can consider in deciding Defendants' motion. (Dkt. No. 82.) Based on a thorough review of the motions, arguments, and relevant law, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED** and Plaintiff's Motion to be Heard be **DENIED**.

### I.   BACKGROUND

Plaintiff Fidelis Badaiki ("Plaintiff") filed this *pro se* lawsuit in the 125th Judicial District of Harris County, Texas on February 28, 2020 against his employers Cameron International Corporation, Schlumberger Holdings Corporation, Schlumberger Limited, Schlumberger Technology Corporation, and several of his supervisors and other associated individuals

---

[1] On July 22, 2020, the District Judge referred the entire case to the Magistrate Judge for full pretrial management pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 14.)

(collectively, "Defendants"). (Dkt. No. 1-2 at 1–23.) In his Original Petition, Plaintiff alleged Defendants breached a Settlement Agreement the parties executed in February 2015 related to discrimination claims Plaintiff had brought before the EEOC. (*Id.*) According to Plaintiff, a year after he signed the Settlement Agreement and returned to work, Defendants stated they could not stop the harassment occurring against him and fired him. (*Id.* at 3.)

On June 8, 2020, Plaintiff filed an Amended Petition in state court explicitly asserting claims for racial discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1981, in addition to the breach of contract claims. (Dkt. No. 1-2 at 24–52.) Defendants removed the case to the Southern District of Texas on June 24, 2020 and subsequently moved to dismiss under Rule 12(b)(6). (Dkt. Nos. 1, 2.) Plaintiff then filed a motion to remand, which the Court denied, and a motion for leave to amend his complaint, which the Court granted. (Dkt. Nos. 49, 54.) In doing so, the Court also denied without prejudice Defendants' motion to dismiss. (Dkt. Nos. 54, 80.)

In his Second Amended Complaint, Plaintiff maintains the same § 1981 and breach of contract claims but adds more factual detail. (Dkt. No. 13-1.) Plaintiff alleges he is a Black male who began working at Cameron International Corporation ("Cameron") in 2007 as an engineer. (*Id.* ¶¶ 7–8.) Plaintiff alleges he complained to his supervisors and Human Resources ("HR") about racial discrimination in 2014 and was fired later that year. (*Id.* ¶¶ 9–10.) Plaintiff subsequently filed an EEOC complaint, settled with Defendants, and returned to work in late February 2015. (*Id.* ¶ 11.) However, according to Plaintiff, his supervisors and other employees continued to mistreat him immediately upon his return. (*Id.*) For example, Plaintiff alleges his manager, Ray Arbor, took away his private office, reduced his project assignments, and stated that "Cameron [would] get rid of [him] if [he] complain[ed] about a protected activity." (*Id.* ¶¶ 12, 14.) Plaintiff also alleges that his co-workers made statements like "you can really take a lot of abuse, for you

people" and that the Engineering Director stated he "carried a .45 caliber hand gun" in response to Plaintiff's request for sensitivity training. (*Id.* ¶¶ 14, 31.) Finally, Plaintiff alleges he applied for a promotion in 2015 and 2016 but was denied and told that no one wanted him to work at Cameron. (*Id.* ¶ 15.) According to Plaintiff, every other similarly situated white employee was approved for these promotions. (*Id.*)

Plaintiff alleges he frequently reported the harassment and discrimination to his supervisors. (Dkt. No. 13-1 ¶¶ 16, 38.) He alleges he filed a complaint with HR for racial harassment and retaliation in violation of Cameron and Schlumberger's Code of Conduct, which promises a retaliation-free environment to those who report violations. (*Id.* ¶¶ 16, 36–37.)[2] Despite having received consistently favorable job evaluations, Plaintiff was fired on March 3, 2016 and replaced with a non-Black and less qualified employee named Tin Nguyen, who Plaintiff alleges requested guidance and mentorship from him. (*Id.* ¶¶ 25–27, 46–47.) Plaintiff alleges that he never saw another non-Black employee mistreated as he was. (*Id.* ¶ 49.)

Defendants moved to dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(6) on February 16, 2021. (Dkt. No. 63.) Defendants argue primarily that Plaintiff's § 1981 claims offer only conclusory statements to connect mistreatment with race and that Plaintiff's breach of contract claims fail to plead the existence of a contract or identify any provision that was breached. (*Id.* at 9–24.) The Court agrees with Defendants that Plaintiff's Second Amended Complaint fails to state any claim for relief. Because Plaintiff has been given several opportunities to cure these deficiencies, the Court recommends dismissing his claims with prejudice.[3]

---

[2] Plaintiff alleges that Schlumberger purchased Cameron sometime in late 2015 or early 2016. (Dkt. No. 13-1 ¶¶ 17, 30.)

[3] Plaintiff brought another case based on the same conduct under Title VII and the Americans with Disabilities Act. (*See* Case No. 19-CV-371.) The two cases were never

## II. RULE 12(b)(6) STANDARDS AND JUDICIAL NOTICE

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows a defendant to move to dismiss a complaint based on failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint need not contain detailed factual allegations, it "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that . . . raise a right to relief above the speculative level." *Wilson v. Hous. Cmty. Coll. Sys.*, 955 F.3d 490, 500 (5th Cir. 2020) (quotations omitted).

In reviewing a 12(b)(6) motion, a court must accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (quotations omitted). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers but are nonetheless insufficient if they contain only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Ganheart v. Brown*, 740 F. App'x 386, 389 (5th Cir. 2018) (quotations and alterations omitted). "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of

---

consolidated but were assigned to the same Judges. The parties in Case No. 19-CV-371 filed cross-motions for summary judgment. (*See* Dkt. Nos. 40, 90.) Those motions are currently pending.

which a court may take judicial notice.'" *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

Plaintiff here filed a Motion to be Heard on the propriety of taking judicial notice under Federal Rule of Evidence 201(e). (Dkt. No. 82.) However, the Court is able to resolve Defendants' Motion to Dismiss without taking judicial notice. In any event, Rule 201(e) does not require a formal hearing, and an opponent's "opportunity to address the issue in briefing is sufficient." *MAZ Encryption Techs., LLC v. Blackberry Ltd.*, 347 F. Supp. 3d 283, 293 (N.D. Tex. 2018) (citing *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 423 (5th Cir. 2013)). Plaintiff briefed this issue several times. (*See* Dkt. No. 82; Dkt. No. 83 at 7, 30.) His Motion to be Heard should be denied.

### III.  PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1981

Plaintiff asserts most of his claims under 42 U.S.C. § 1981, which states that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). This includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b); *see Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475 (2006). Section 1981 applies in the employment context and is "a means of punishing employers who discriminate on the basis of race." *Carroll v. Gen. Accident Ins. Co. of Am.*, 891 F.2d 1174, 1176 (5th Cir. 1990). Section 1981 claims can include racial discrimination, hostile work environment, and retaliation, among others. *See Ricks v. Friends of WWOZ, Inc.*, No. 18-CV-9767, 2019 WL 3858950, at *5 (E.D. La. Aug. 15, 2019).

**A. Section 1981's Threshold Contractual Requirement**

Defendants argue that most of Plaintiff's § 1981 claims should be dismissed because he fails to allege a contractual or proposed contractual relationship with any of the Defendants except Cameron. (Dkt. No. 63 at 11.)

It is true that "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes to make and enforce." *Domino's Pizza, Inc.*, 546 U.S. at 479–80 (quotations omitted). However, the Fifth Circuit has recognized "a right of recovery under § 1981 against individuals who are not privy to an actual or potential employment contract." *Miller v. Wachovia Bank, N.A.*, 541 F. Supp. 2d 858, 861 (N.D. Tex. 2008) (providing in-depth analysis of Fifth Circuit caselaw). For example, a non-party employee can be liable if he is "essentially the same" as the employer in exercising authority over the plaintiff. *Id.* at 863; *see also Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 932–33 (5th Cir. 2021). Nonetheless, "the Fifth Circuit has declined to define comprehensively the universe of third parties who can be liable under § 1981." *Black Farmers & Agrics. Ass'n, Inc. v. Hood*, No. 13-CV-763, 2014 WL 935147, at *7 (S.D. Miss. Mar. 10, 2014) (quotations omitted), *aff'd*, 585 F. App'x 306 (5th Cir. 2014).

Given that the Court recommends dismissal on other grounds, it need not determine whether Plaintiff has sufficiently alleged a contractual or proposed contractual relationship with each Defendant. However, Plaintiff clearly alleges that he has an employment relationship with Cameron and Schlumberger—who purchased Cameron while he was still an employee—and that both entities are subject to the Settlement Agreement. (Dkt. No. 13-1 ¶¶ 30, 63.)[4] Moreover,

---

[4] The Settlement Agreement states it is "made and entered into by Fidelis Badaiki . . . and Cameron International Corporation on behalf of itself and its past, present and future subsidiaries,

Plaintiff alleges several of the individual Defendants were his supervisors or HR representatives who may have exercised sufficient authority over him to be considered "essentially the same" as Cameron or Schlumberger. (*Id.* ¶¶ 8, 10, 12.) As a general matter, Plaintiff's allegations likely satisfy § 1981's threshold contractual requirement. *See Ricks*, 2019 WL 3858950, at *6 (finding it plausible that manager and human resources representatives exercised sufficient "managerial authority and control over employment decisions concerning plaintiff" for his § 1981 claims to survive a motion to dismiss).

### B. Section 1981's Statute of Limitations

Defendants next argue Plaintiff's § 1981 claims are barred by the statute of limitations. (Dkt. No. 63 at 9–10.) Defendants assert that § 1981 claims carry either a two-year or four-year statute of limitations, and Plaintiff's claims are time-barred because he was fired on March 3, 2016 but did not allege racial discrimination until his Amended Petition on June 8, 2020. (*Id.*) Plaintiff argues that his § 1981 claims carry a four-year statute of limitations and that they relate back to his Original Petition filed on February 28, 2020 under Federal Rule of Civil Procedure 15. (Dkt. No. 83 at 8–9.) The Court agrees with Plaintiff.

Plaintiff's discrimination, hostile work environment, and retaliation claims are subject to a four-year statute of limitations. While § 1981 itself does not contain its own statute of limitations, Congress created a catchall four-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004); *see* 28 U.S.C. § 1658. Congress enacted § 1981 well before this date but amended it in 1991 to bring post-contract formation conduct within its scope. *Jones*, 541 U.S. at 373; *see also Domino's*

---

parents, divisions, and affiliates, and past, present, and future employees, officers, directors, agents, insurers and legal counsel." (Dkt. No. 62.)

*Pizza, Inc.*, 546 U.S. at 477. Causes of action made possible by the amendment—including the termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship—are subject to the four-year limitations period. *Jones*, 541 U.S. at 382; *see also Fonteneaux v. Shell Oil Co.*, 289 F. App'x 695, 698 (5th Cir. 2008). This includes Plaintiff's claims pertaining to conduct that occurred after he returned to work in February 2015 and until he was terminated on March 3, 2016.[5] *See Hendrix v. iQor Inc.*, No. 20-CV-437, 2021 WL 3040776, at *3 (N.D. Tex. June 7, 2021), *report and recommendation adopted*, 2021 WL 3036949 (July 19, 2021).[6]

Plaintiff filed the Original Petition—which did not explicitly allege claims under § 1981—within the four-year statute of limitations on February 28, 2020. (Dkt. No. 1-2 at 1–23.) Plaintiff filed the Second Amended Complaint—which does allege claims under § 1981—outside the four-year statute of limitations on July 21, 2020. (Dkt. No. 13-1.) Plaintiff's § 1981 claims are thus time-barred unless they relate back to the Original Petition.

Under Rule 15(c), an amendment relates back to the original pleading when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B). Generally, amendments relate

---

[5] Plaintiff asserts he was called back to work by Steve McKenzie after March 3, 2016 and was again terminated on December 29, 2017 because of his race. (Dkt. No. 13-1 ¶ 21.) He attaches a 2017 W-2 from Cameron to his Second Amended Complaint in support of this claim. (Dkt. No. 13-4.) While this claim clearly is not barred by the statute of limitations, it is conclusory and fails to meet the "but for" pleading standard explained below. It should be dismissed.

[6] To the extent Plaintiff alleges a separate failure-to-promote claim, this claim would also be subject to the four-year statute of limitations. *See Fonteneaux v. Shell Oil Co.*, No. 05-CV-4033, 2007 WL 7210406, at *2–3 (S.D. Tex. Dec. 14, 2007) (explaining failure-to-promote claims that do not involve new and distinct relationships—such as routine increases in salary or responsibility—were made possible by the 1991 amendment and thus are subject to the four-year catchall statute of limitations). The Court, however, interprets Plaintiff's promotion-related allegations as part of his hostile work environment claim. (*See* Dkt. No. 13-1 ¶¶ 12, 56.)

back when they "seek[] to correct a technical difficulty, state a new legal theory of relief, or amplify the facts alleged in a prior complaint." *Flores v. Cameron Cty.*, 92 F.3d 258, 273 (5th Cir. 1996) (quotations omitted); *see Aforigho v. Tape Prods. Co.*, 334 F.R.D. 86, 94 (S.D. Tex. 2020) ("[T]he relation-back doctrine is controlled not by the captions given a particular cause of action, but by the underlying facts upon which the cause of action is based.") (quotations omitted). On the other hand, amendments do not relate back when they "depend upon events separate in both time and type from the originally raised episodes," *Halprin v. Fed. Deposit Ins. Corp.*, No. 13-CV-1042, 2016 WL 4511109, at *3 (W.D. Tex. Aug. 26, 2016) (quotations omitted), or "attempt[] to add a new legal theory unsupported by factual claims raised in the original complaint." *McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850, 864 (5th Cir. 1993).

In the Original Petition filed February 28, 2020, Plaintiff focused on allegations that Defendants breached the Settlement Agreement. (Dkt. No. 1-2.) However, Plaintiff alleged the breach occurred because Defendants stated they could not stop the harassment occurring against him and then fired him. (*Id.* at 3.) Plaintiff also attached email negotiations between the parties titled "Racism Retaliation Discrimination ADA." (*Id.* at 8–22.) Plaintiff's Second Amended Complaint builds on these facts and adds detail to his allegations of mistreatment and termination. (Dkt. No. 13-1.) Plaintiff's § 1981 claims in the Second Amended Complaint arise out of the same underlying facts set out or attempted to be set out in the Original Petition and thus they relate back to the date of the Original Petition. *See Jackson v. Corp. Serv. Co.*, No. 11-CV-4404, 2013 WL 12177339, at *7–8 (S.D. Tex. Feb. 6, 2013) (explaining the "legacy of cases that permissively apply the relation back doctrine in employment discrimination cases" and finding relation back of claims alleging different discriminatory motives or actions appropriate). Any claims based on conduct occurring on or after February 28, 2016—including conduct relating to discrimination,

hostile work environment, and retaliation—are timely. (*See* Dkt. No. 13-1 ¶¶ 15, 21, 51 (alleging conduct under each theory occurring in late February and early March 2016).)

### C. Section 1981's "But For" Causation Requirement

While Defendants make various arguments specific to each of Plaintiff's claims, they argue all § 1981 claims should be dismissed for failure to adequately plead "but for" causation as explained by the Supreme Court in *Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009 (2020). (Dkt. No. 63 at 11–19.) In other words, according to Defendants, Plaintiff pleads only conclusory allegations to support racial animus. (*Id.*) Plaintiff asserts that he satisfies the "but for" standard because he used the word "race" in the Second Amended Complaint more than sixty times and followed the example set forth in *Comcast* verbatim. (Dkt. No. 83 at 24.) He then spends at least eight pages quoting his Second Amended Complaint without further analysis. (*Id.* at 14–22.) Finally, Plaintiff argues that he gave Defendants fair notice of his claims and that a jury should determine whether he was discriminated against because of his race. (*Id.* at 12–14.) The Court agrees with Defendants.

To state a discrimination claim under § 1981, a plaintiff must allege facts in support of "an intent to discriminate on the basis of race." *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994). Likewise, to state a hostile work environment claim under § 1981, a plaintiff must allege facts to support that "the harassment complained of was based on race." *Miller*, 541 F. Supp. 2d at 868 (quotations omitted). To state a retaliation claim under § 1981, a plaintiff must allege facts that support causation between a protected activity—which must include complaints of race-related discrimination or harassment—and an adverse action. *McLeod v. Floor & Decor Outlets of Am., Inc.*, No. 20-CV-3134, 2021 WL 2515750, at *3 (N.D. Tex. June 18, 2021). For each of these claims, "a plaintiff *must initially plead* and ultimately prove that, but for race, [he] would not

have suffered the loss of a legally protected right." *Comcast Corp.*, 140 S. Ct. at 1019 (emphasis added); *see also Simmons v. Triton Elevator, LLC*, No. 19-CV-1206, 2020 WL 7770245, at *3 (N.D. Tex. Dec. 30, 2020) ("[Plaintiff] has the burden of pleading facts that, taken as true, permit the Court to infer that race was a but-for cause of his injury in order to sustain his § 1981 discrimination claim.") (quotations and alterations omitted).

Plaintiff's allegations are conclusory and lack the specificity required to meet his "but for" pleading burden. For example, Plaintiff alleges his supervisors responded inappropriately to his request for sensitivity training but fails to specify what kind of sensitivity training he suggested— *i.e.*, whether it was racial sensitivity training, disability sensitivity training, or general training on workplace interactions. (*See* Dkt. No. 13-1 ¶¶ 14, 59.) Plaintiff also fails to allege that his supervisors' responses to the request for training—while certainly inappropriate if true—carried any racial connotation or motivation. (*See id.* ¶ 31 (alleging HR representative's response to sensitivity training request was "I truly pray you find another job"), ¶ 34 (alleging supervisor pointed out that Plaintiff's complaints did not result in sensitivity training), ¶ 59 (alleging supervisor stated he carried a gun instead of sensitivity training).)

As to Plaintiff's allegations that his co-workers vandalized his cubicle or made inappropriate comments towards him, he fails altogether to connect such actions to race. (*See* Dkt. No. 13-1 ¶¶ 14, 31, 59.) Although Plaintiff alleges that another employee told him "you can really take a lot of abuse, for you people," the term "you people" is insufficient to plausibly plead discriminatory intent. *See Maldonado v. FirstService Residential, Inc.*, No. 20-CV-1484, 2021 WL 2517542, at *7 (S.D. Tex. June 18, 2021) (finding the phrases "those people" and "these people" were insufficient to state a § 1981 claim); *see also Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010) (agreeing with several courts that the phrase "you people" is "too

ambiguous to constitute direct evidence of discrimination when used in isolation"); *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 420 (5th Cir. 2009) (finding vague comments insufficient to establish discrimination).

As to Plaintiff's allegations that he was treated differently than non-Black employees, the Court recognizes that such allegations can, in some instances, be sufficient to survive a 12(b)(6) motion. *See Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017); *Hoyt v. Am. Nat'l Ins. Co.*, No. 20-CV-545, 2021 WL 2823449, at *5 (N.D. Tex. July 6, 2021). However, "naked allegations of discriminatory intent are not enough," *Maldonado*, 2021 WL 2517542, at *5, and Plaintiff's allegations here are conclusory. For example, Plaintiff alleges other similarly situated white employees were approved for a raise but fails to state who those other employees were or how they were similarly situated. (*See* Dkt. No. 13-1 ¶ 15.) Plaintiff alleges he had never seen non-Black employees harassed but fails to allege or identify anyone else who was mistreated. (*See id.* ¶ 49.) Finally, Plaintiff alleges he was replaced by Tin Nguyen, a non-Black employee with less experience, but fails to allege facts for the Court to plausibly infer that Mr. Nguyen—who allegedly worked at Cameron while Plaintiff was still an employee[7]—was later assigned Plaintiff's position or given his responsibilities. (*See id.* ¶¶ 47–48.)

As to Plaintiff's allegations of retaliation, the Second Amended Complaint contains only conclusory statements that Plaintiff complained of racial harassment. Plaintiff generally fails to allege what behaviors he complained about, who he complained about, or any other facts indicating he framed his complaints around race at the time. (*See* Dkt. No. 13-1 ¶¶ 13, 16, 59.) The statement Mr. Arbor allegedly made—that Cameron would get rid of Plaintiff if he engaged in a protected

---

[7] *See* Dkt. No. 13-1 ¶¶ 26–28 (alleging that Mr. Nguyen came to Plaintiff for mentorship and that Defendants *kept* a non-Black employee and fired him instead).

activity—does not suffice because Plaintiff fails to allege whether this conversation pertained to a race-related protected activity. (*See id.* ¶ 14.)[8] The letter Plaintiff allegedly wrote to Schlumberger also does not suffice because Plaintiff fails to allege that the recipients had anything to do with the acts of retaliation against him; in fact, he alleges only that these Defendants "did not take any preventative, corrective, or remedial actions" in response to his letter. (*Id.* ¶ 41; *see also id.* ¶ 48 (alleging several other Defendants were responsible for his termination).)

Plaintiff's argument that he provided Defendants fair notice of racial discrimination under Texas Rule of Civil Procedure 45(b) fails because the Federal Rules of Civil Procedure apply to the analysis of his Second Amended Complaint. *See Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946–47 (5th Cir. 2014). Plaintiff's argument that a jury should determine whether any racial discrimination occurred is likewise unavailing because it ignores the pleading standards a plaintiff must meet in order to reach a jury. Finally, contrary to Plaintiff's contention, the Supreme Court did not lay out an example in *Comcast* of how to plead "but for" causation; it only determined that the "but for" standard applies at the pleadings stage. *See Comcast*, 140 S. Ct. at 1019 (stating the Court did not determine whether the operative complaint stated a claim for relief and remanding the case).

The Court finds that Plaintiff alleges racial discrimination in only a conclusory manner and therefore does not meet his burden of pleading "but for" causation. Plaintiff's § 1981 claims should be dismissed. *See, e.g.*, *Simmons*, 2020 WL 7770245, at *3 (finding plaintiff's allegations of

---

[8] *See Gonzalez v. Cooper*, No. 13-CV-3005, 2015 WL 2185166, at *2 (W.D. La. May 8, 2015) (explaining that, to state a retaliation claim under § 1981, a plaintiff must allege retaliation for race-based protected activity); *see also Corrica v. Am. Airlines*, No. 20-CV-679, 2020 WL 7711830, at *5 (N.D. Tex. Dec. 28, 2020) (explaining that allegations of a retaliatory hostile work environment resulting from complaint of sexual harassment were insufficient under § 1981, which protects against racial discrimination).

racially discriminatory remarks did not create an inference that he was fired because of his race and thus he failed to meet the "but for" pleading standard); *Corrica v. Am. Airlines*, No. 20-CV-679, 2020 WL 7711830, at *4–5 (N.D. Tex. Dec. 28, 2020) (dismissing discrimination and hostile work environment claims under § 1981 because plaintiff failed to allege, in a non-conclusory manner, that mistreatment was racially motivated).

## IV. PLAINTIFF'S BREACH OF CONTRACT CLAIMS

Plaintiff alleges Defendants breached the Settlement Agreement by terminating his employment a year after he returned to work. (Dkt. No. 13-1 ¶¶ 12, 60–63.) Plaintiff also alleges Defendants breached the Code of Conduct's statement that Cameron promises a retaliation-free environment for anyone who comes forward to report harassment. (*Id.* ¶¶ 36–37, 60.) Defendants argue that Plaintiff fails to identify a specific provision of the Settlement Agreement they breached and that the Code of Conduct is not an enforceable contract. (Dkt. No. 63 at 19–24.) Plaintiff argues Defendants breached email negotiations related to the Settlement Agreement which stated he could return to work. (Dkt. No. 83 at 25–27.) Plaintiff also appears to argue Defendants violated the implied duty of good faith and fair dealing by entering into the Settlement Agreement with the intent to breach it. (*Id.* at 26.) The Court finds that Plaintiff has failed to allege a breach of contract claim for either the Settlement Agreement or the Code of Conduct.

Under Texas law, the elements of a breach of contract claim are: "'(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v.*

*Kalama Int'l, L.L.C.,* 51 S.W.3d 345, 351 (Tex. App. 2001)); *see also Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2015).[9]

As to the Settlement Agreement, Plaintiff's breach of contract claim must be dismissed for two reasons. First, to the extent Plaintiff alleges that Defendants intended to breach the Settlement Agreement before it was formed or immediately upon his return to work in February 2015, such claims are subject to Texas's four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE §§ 16.004, 16.051); *see also Bell v. Phila. Int'l Recs.*, 981 F. Supp. 2d 621, 625 (S.D. Tex. 2013) (explaining the statute of limitations begins to run "when facts come into existence that authorize a claimant to seek a judicial remedy") (quotations omitted). Plaintiff did not file his Original Petition until February 28, 2020 and thus these claims are time-barred.

Second, Plaintiff fails to identify a provision of the contract Defendants allegedly breached by firing him. "As a general rule, a plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant." *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 971 & n.4 (N.D. Tex. 2014) (quotations omitted) (collecting cases); *see also Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014). The Settlement Agreement did not contain any reference to reinstatement. (*See* Dkt. No. 62.) The earlier email negotiations involving Plaintiff's return to work are not part of the contract, as the Settlement Agreement explicitly states it "contains the entire understanding between [the parties] and supersedes all prior agreements and understandings relating to the subject matter of this

---

[9] The Court may consider the Code of Conduct and Settlement Agreement without taking judicial notice because Plaintiff attached the Code of Conduct to his Second Amended Complaint and consistently referred to the Settlement Agreement throughout the Second Amended Complaint. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (explaining courts may consider pleadings and their attachments on a 12(b)(6) motion, as well as documents referred to in the pleadings and central to plaintiff's claims).

Agreement." (*Id.* ¶ 11.)[10] Even if reinstatement was part of the Settlement Agreement, Plaintiff has not plausibly alleged breach because he recognizes that he returned to work for more than a year after he was fired. (Dkt. No. 13 ¶ 21.) He does not allege, nor could he, that any reinstatement extended his employment indefinitely. *See Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir. 1991). Plaintiff's breach of contract claim based on the Settlement Agreement must be dismissed. *See, e.g.*, *Baker*, 64 F. Supp. 3d at 971–72 (finding complaint failed to allege enough facts to meet 12(b)(6) pleading standards because it did not identify which provision of the contract was allegedly breached).

As to the Code of Conduct, Plaintiff has failed to allege it was an enforceable contract. "[B]oth the Fifth Circuit and the Texas Supreme Court routinely dismiss breach of contract claims based on purported violations of policies contained in employee handbooks." *Reece v. Alcoa Power*, No. 16-CV-56, 2017 WL 2628923, at *4 (N.D. Tex. May 26, 2017), *report and recommendation adopted*, 2017 WL 2619334 (June 16, 2017); *see Zimmerman*, 932 F.2d at 471 ("Employee handbooks and manuals do not create contracts when the parties have not expressly agreed that the procedures contained in these materials are binding."). Several Texas courts have also found employee handbooks not to be binding when employers are free to unilaterally amend the policies at any time. *See Hicks v. Baylor Univ. Med. Ctr.*, 789 S.W.2d 299, 302 (Tex. App. 1990); *Berry v. Doctor's Health Facilities*, 715 S.W.2d 60, 62 (Tex. App. 1986).

---

[10] *See Ntakirutimana v. Laredo Tex. Hosp. Co., L.P.*, No. 09-CV-114, 2017 WL 1367235, at *5 (S.D. Tex. Feb. 16, 2017) (explaining that such a clause "merges all oral/draft agreements into the final contract for purposes of excluding the parol evidence that a party might otherwise use to explain the meaning of the final contract" and "bar[s] those agreements that were part of the negotiations that led to the final agreement"). To the extent Defendants view the Settlement Agreement as reinstating Plaintiff to his former position (*see* Case No. 19-CV-371, Dkt. No. 40 at 2–3), they also fail to point to a reinstatement provision in the Settlement Agreement.

The Code of Conduct here does contain some arguably binding language. (*See* Dkt. No. 13-5 at 7 ("I understand that a violation of the policies and ethical standards outlined in this Code may subject me to disciplinary action, up to and including termination, as well as civil and criminal penalties.").) However, the Code of Conduct also frames itself as a general guide for navigating workplace conflicts. (*See id.* at 2 ("Our code cannot anticipate every situation we might encounter. However, it will help us make sound ethical decisions. Our code serves as a guide[.]"), 3 (listing resources and tools employees can use to make ethical decisions).) The Code also allows Cameron to unilaterally amend it at any time without providing employees with a hard copy. (*Id.* at 7.) The Court finds that, when considered as a whole, the Code of Conduct is a unilateral employment policy and not a binding contract between the parties. *See, e.g.*, *Budri v. FirstFleet Inc.*, No. 19-CV-409, 2019 WL 5587181, at *19 (N.D. Tex. Sept. 20, 2019) (finding plaintiff failed to allege facts to allow a plausible inference that company policy clearly indicated contractual intent), *report and recommendation adopted*, 2019 WL 5579971 (Oct. 29, 2019).

Even if the Code of Conduct were a binding contract, however, Plaintiff fails to allege facts that would allow the Court to plausibly infer a breach. For example, while Plaintiff alleges Cameron's managers and directors signed the Code, he does not allege when this occurred or when the Code came into effect. (*See* Dkt. No. 13-1 ¶¶ 36–37.) It is not clear that the version Plaintiff provided applies to the particular conduct at issue, as the Code does not contain dates and can be amended at any time. Moreover, given that Plaintiff alleges Schlumberger purchased Cameron while he was still an employee and does not allege that Schlumberger adopted the Code of

Conduct, he fails to adequately allege it applies to his termination. The Court finds Plaintiff has not stated a claim for breach of contract based on the Code of Conduct.[11]

## V. PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO AMEND

Rule 15 of the Federal Rules of Civil Procedure directs courts to "freely give leave [to amend the pleadings] when justice so requires." FED. R. CIV. P. 15(a)(2); *see Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). However, it is within the sound discretion of the court to decide whether to grant leave to amend, and courts frequently deny leave when a party fails to submit a proposed pleading or explain how he can cure any defects. *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003) (finding the district court did not abuse its discretion in denying leave to amend after dismissing claims under Rule 12(b)(6) because plaintiffs did not explain how they would replead the allegations and did not proffer a proposed amended complaint). Courts may also deny leave to amend when a plaintiff has been given multiple opportunities to state a claim for relief and it is clear he has pleaded his best case. *See Roa v. City of Denison*, No. 16-CV-115, 2017 WL 4675062, at *8 (E.D. Tex. Oct. 18, 2017).

Plaintiff does not ask for leave to amend, submit a proposed amendment, or otherwise indicate how he might cure the deficiencies identified above. Plaintiff has already filed three complaints in this case. (Dkt. No. 1-2 at 1–53 (Original and Amended Petitions); Dkt. No. 13-1 (Second Amended Complaint).) Moreover, Plaintiff filed his Second Amended Complaint after Defendants had filed an earlier version of their 12(b)(6) motion—which was denied without

---

[11] Plaintiff makes various other arguments pertaining to the timeliness of Defendants' Motion to Dismiss and waiver of the arguments presented in it. (*See* Dkt. No. 83 at 2–6.) However, Plaintiff misconceives which civil procedure rules apply to the case and when they apply. *See Taylor*, 744 F.3d at 946–47 (explaining the federal rules apply only after removal, whereas state rules apply before removal). Plaintiff's arguments are meritless.

prejudice given the amendment—and thus Plaintiff was aware of the potential deficiencies in his allegations but failed to meaningfully correct them. (*See* Dkt. Nos. 2, 13-1.) Finally, the Court ruled previously that it would "not grant any further amendments absent extremely compelling circumstances." (Dkt. No. 54 at 5.) No such circumstances are present. Plaintiff should not be given a fourth opportunity to state a claim for relief, and thus the Court recommends Plaintiff's claims be dismissed with prejudice.

## VI.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Defendants' Motion to Dismiss (Dkt. No. 63) be **GRANTED**, Plaintiff's Motion to be Heard (Dkt. No. 82) be **DENIED**, and the case be **DISMISSED WITH PREJUDICE**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on August 23, 2021.

Sam S. Sheldon
United States Magistrate Judge